UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUSTIN EVERS, as an individual and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>LA-Z-BOY INCORPORATED, a Michigan corporation; LZB RETAIL, INC., a Michigan corporation; LA-Z-BOY FURNITURE GALLERIES; and DOES 1 through 50, inclusive,<br><br>                                    Defendants. | Case No.:  22cv578-LL-BLM<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>**[ECF No. 6]** |

        This matter is before the Court on Plaintiff Dustin Evers's ("Plaintiff") Motion to Remand. ECF No. 6. For the reasons set forth below, and for some of the same reasons set forth in the Court's remand of Plaintiff's separate lawsuit against Defendants, the Court **GRANTS** Plaintiff's Motion to Remand and **REMANDS** this matter to San Diego County Superior Court for lack of subject matter jurisdiction.

/ / /

/ / /

/ / /

# I.     BACKGROUND

## A.     The Previously Filed Action (*Evers I*)

On November 12, 2021, Plaintiff filed a putative class action in the San Diego County Superior Court against Defendant La-Z-Boy Incorporated and Specially Appearing Defendant LZB Retail, Inc. In the complaint, Plaintiff sought to certify one putative class and seven different subclasses of Defendants' current and former employees. Plaintiff alleged nine separate causes of action against Defendants for: (1) failure to pay all minimum wages; (2) failure to pay all overtime wages; (3) meal period violations; (4) rest period violation; (5) untimely payment of wages; (6) wage statement violations; (7) waiting time penalties; (8) failure to reimburse business expenses; and (9) violations of California's Unfair Competition Law.

On December 17, 2021, Defendants removed the action to federal court ("*Evers I*"). *See Evers I*, 21-cv-2100-LL-BLM, ECF No. 1. Defendants' notice of removal stated that Defendants were removing the case pursuant to 28 U.S.C. § 1441, the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), and 28 U.S.C. § 1446. *Id.* On January 18, 2022, Plaintiff filed a motion to remand in *Evers I*. *See Evers I*, ECF No. 9. On July 27, 2022, the Court granted Plaintiff's motion to remand and ordered *Evers I* be remanded to the San Diego County Superior Court because the Court did not possess subject matter jurisdiction based on CAFA or traditional diversity jurisdiction. *See Evers I*, ECF No. 20.

## B.     This Current Action (*Evers II*)

On February 28, 2022, Plaintiff, on behalf of himself and other "aggrieved employees," brought the instant representative action pursuant to the California Private Attorney General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 *et seq.*, against Defendant La-Z-Boy Incorporated, Specially Appearing Defendant LZB Retail, Inc., and Defendant La-Z-Boy Furniture Galleries (collectively, "Defendants") in the San Diego County Superior Court. ECF No. 1, Ex. A ("Complaint"). Plaintiff alleged eleven separate causes of actions against Defendants for: (1) failure to pay all regular and minimum wages; (2)

failure to pay all overtime wages; (3) meal period violations; (4) rest period violations; (5) untimely payment of wages; (6) wage statement violations; (7) failure to pay all wages upon separation; (8) failure to reimburse business expenses; (9) paid sick leave violations; (10) record keeping violations; and (11) failure to produce records, based on alleged violations of California law. *See generally id.*

On April 25, 2022, Defendants removed this action to federal court ("*Evers II*"). ECF No. 1 ("Notice of Removal" or "NOR"). Defendants' Notice of Removal stated that Defendants were removing the case pursuant to CAFA, 28 U.S.C. § 1332(a), 28 U.S.C. § 1332(d), and federal question. *Id.* at 2. On May 24, 2022, Plaintiff filed the instant Motion to Remand.[1] *See generally* ECF No. 6-1 ("Motion"). On June 14, 2022, Defendants filed their Opposition. ECF No. 7 ("Opposition" or "Oppo."). On June 21, 2022, Plaintiff filed his Reply in support of his Motion. ECF No. 8 ("Reply").

## II.   LEGAL STANDARD

Removal is proper where federal courts have original jurisdiction over an action brought in state court. 28 U.S.C. § 1441(a). Section 1441 provides two bases for removal: diversity jurisdiction and federal question jurisdiction. *Id.* Federal courts have diversity jurisdiction "where the amount in controversy" exceeds $75,000, and the parties are of "diverse" state citizenship. 28 U.S.C. § 1332. Federal courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

---

[1] Before filing the Motion, Plaintiff failed to "meet and confer" under the Court's Civil Chambers Rules, Rule 3(A), which requires the moving party to "first contact opposing counsel to discuss" a contemplated motion and any potential resolution. Lopez Civil Chambers Rules, Rule 3(A). The Court in its discretion, however, declines to deny the Motion on this basis given that the instant Motion concerns the Court's subject matter jurisdiction, and Plaintiff's failure to meet and confer does not prejudice Defendants. *See Zamorano v. City of San Jacinto*, 2012 WL 12886852, at *2 (C.D. Cal. July 26, 2012) ("[T]he failure to meet and confer appears to have caused . . . no actual prejudice.").

1    The party invoking the removal statute bears the burden of establishing that federal
2    subject matter jurisdiction exists. *Ibarra v. Manheim Invs., Inc*., 775 F.3d 1193, 1197–98
3    (9th Cir. 2015) (citing *Dart Basin Operating Co. v. Owens*, 574 U.S. 81, 88–91 (2014)).
4    "Yet, when the defendant's assertion of the amount in controversy is challenged . . . both
5    sides submit proof and the court then decides where the preponderance lies." *Id.* Moreover,
6    courts will "strictly construe the removal statute against removal jurisdiction." *Gaus v.*
7    *Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663
8    (9th Cir. 1988)); *see also Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th
9    Cir. 2013). Therefore, the court must remand the case "if there is any doubt as to the right
10   of removal in the first instance." *Gaus*, 980 F.2d at 566 (citing *Libhart v. Santa Monica*
11   *Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

12   **III.   DISCUSSION**

13       At issue in this Motion is whether the Court has removal jurisdiction pursuant to
14   traditional diversity jurisdiction or CAFA. First, Plaintiff contends that the Court lacks
15   traditional diversity jurisdiction because the amount in controversy for Plaintiff's
16   individual share of the PAGA penalties is less than $75,000. Motion at 2. The parties do
17   not dispute that minimal diversity exists. Plaintiff also contends that removal was improper
18   because Defendants applied higher "subsequent" violation penalties to inflate the amount
19   in controversy. *Id.* at 6. Second, Plaintiff contends that Defendants' removal was improper
20   pursuant to CAFA because this is a PAGA case, not a class action. *Id.* at 8.

21       **A.    Traditional Diversity Jurisdiction**

22           **1.    Calculating the Amount in Controversy in PAGA Claims**

23       Plaintiff contends that Defendants' removal was improper because the amount in
24   controversy does not exceed $75,000. *Id.* at 4. PAGA requires that any penalties assessed
25   against a defendant "be distributed as follows: 75 percent to the Labor and Workforce
26   Development Agency ("LWDA") . . . and 25 percent to the aggrieved employees." Cal.
27   Lab. Code § 2699(i). The parties disagree as to whether the individual plaintiff's share

28

(25%) can be aggregated with the share that goes to the State of California (75%) to meet the minimum amount in controversy. *Compare* Motion at 2 *with* Oppo. at 8.

In Defendants' NOR, Defendants allege that the total amount in controversy for the PAGA claims is $63,250.00. NOR ¶ 64. Relying on *Urbino v. Orkin Services of California, Inc.* and *Coffin v. Magella HRSC, Inc.*, Plaintiff asserts that Defendants cannot establish jurisdiction by including the State's 75% share of Plaintiff's PAGA penalties. *See* Motion at 4; 726 F.3d 1118 (9th Cir. 2013); 2020 WL 773255, at *2 (S.D. Cal. Feb. 18, 2020). Defendants counter that the only question before the Ninth Circuit in *Urbino* was "whether a plaintiff's PAGA claims may be aggregated with those of other aggrieved employees," and not whether employees share their claims with the LWDA. Oppo. at 15 (citing *Urbino*, 726 F.3d at 1120, 1122). In support of this, Defendants cite to additional cases where the courts included the LWDA's share of PAGA penalties in calculating the amounts in controversy. Oppo. at. 16–19; *see Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) (held taxes paid by the state must be included within any amount in controversy calculation because recovery of sums would entail payment by the defendant); *Schiller v. David's Bridal*, *Inc.*, 2010 WL 2793650, at *8 (E.D. Cal. July 14, 2010) (held civil penalties payable to the LWDA are included in the amount in controversy calculation because "the amount in controversy is calculated based upon the amount put into controversy by the complaint, regardless of how the recovery is divided."). Defendants also cite multiple times to *Patel v. Nike Retail Services, Inc.*, where a district court distinguished *Urbino*'s holding, and held that the entire amount of PAGA penalties attributable to a plaintiff's claims count towards the amount in controversy because "the individual employee and the LWDA are not joining together to assert different claims, they are uniting to enforce a single title or right in which they have a common and undivided interest." 58 F. Supp. 3d 1032, 1048 (N.D. Cal. 2014) (citations and quotation marks omitted).

Many courts have analyzed this issue, and there is a split of authority between the courts on how this allocation affects what amount of the penalty may be considered in the amount in controversy. Some courts only consider the plaintiff's 25% share of the PAGA

claim, while other courts choose to consider the additional 75% that the LWDA collects as well. *Compare Biag v. King George – J&J Worldwide Services, LLC*, 2020 WL 4201192, at \*9 (S.D. Cal. July 22, 2020) (considering only plaintiff's 25% portion of the PAGA claims for the amount in controversy), *and Hernandez v. Dunbar Armored, Inc*., 2019 WL 1324743, at \*3 (S.D. Cal. Mar. 25, 2019) (considering only plaintiff's 25% portion in "line with a majority of districts"), *with Patel*, 58 F. Supp. 3d at 1032 ("courts should take into account 100% of the penalties stemming from the plaintiff's claims").

The issue is undecided, but most courts, including the courts in this district, only consider the plaintiff's 25% share in calculating the amount in controversy. *See Coffin*, 2020 WL 773255, at \*4, (S.D. Cal. Feb. 18, 2020) (noting split of authority, but stating that most courts only consider the plaintiff's portion of the award); *Proctor v. Helena Agri-Enters.*, LLC, 2019 WL 1923091, at \*2 (S.D. Cal. Apr. 30, 2019). Many courts have also found this approach to be more persuasive because there is "no logical reason for [c]ourts to refuse to consider one portion of an award that the plaintiff will not recover (the other aggrieved employees' shares), but take into account another portion that the plaintiff will not recover (LWDA's share)." *Coffin*, 2020 WL 773255, at \*5 (citing *Sloan v. IGH Mgmt (Md.) LLC*, 2019 WL 1111191, at \*2 (C.D. Cal. Mar. 11, 2019)); *see also Adame v. Comtek Logistics, Inc.*, 2016 WL 1389754, at \*6 (C.D. Cal. Apr. 7, 2016). This Court agrees with this analysis and "finds no reason to stand with the outliers." *Coffin*, 2020 WL 773255, at \*6. Moreover, the strong presumption against removal jurisdiction weighs in favor of remand. *Id.*; *Gaus*, 980 F.2d at 566. The Court will therefore only consider Plaintiff's 25% portion of the PAGA claims for the amount in controversy. As such, even accepting Defendants' highest calculation, which combines penalties for all alleged Labor Code violations ($63,250.00), Defendants' maximum PAGA exposure would be $15,812.50. Therefore, Defendants have not shown the amount in controversy exceeds $75,000.

### 2.   Attorneys' Fees

Adding attorneys' fees also do not raise the amount in controversy above the threshold. Defendants include attorneys' fees of 25% of the total amount in controversy for

1    all underlying claims as part of their calculations, amounting to $15,812.50. NOR ¶ 88. In

2    Plaintiff's Motion, Plaintiff states Defendants' fee projections are "overstated, as only

3    Plaintiff's share of attorneys' fees may be included in the amount in controversy." Motion

4    at 4. In their Opposition, Defendants state the calculations were proper because they only

5    included fees attributable to Plaintiff's individual penalties. Oppo. at 14.

6        The Court agrees with Defendants' use of a 25% attorneys' fee recovery for fees

7    attributable to Plaintiff's individual penalties. PAGA provides that "[a]ny employee who

8    prevails in any [PAGA] action shall be entitled to an award of reasonable attorney's fees

9    and costs." Cal. Lab. Code § 2699(g)(1). "[W]here an underlying statute authorizes an

10   award of attorneys' fees, either with mandatory or discretionary language, such fees may

11   be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150,

12   1156 (9th Cir. 1998). Courts may exercise their discretion to choose between the lodestar

13   and percentage method in calculating fees. *In re Mercury Interactive Corp. Secs. Litig.*,

14   618 F.3d 988, 992 (9th Cir. 2010). Under the percentage method, the Ninth Circuit and the

15   district courts have established that 25% is a relevant "benchmark" level for attorney's fees

16   in a common fund case. *See Fritsch v. Swift Transportation Company of Arizona, LLC*, 899

17   F.3d 785, 796 n.6 (while a per se rule that 25% of the total recovery for attorneys' fees in

18   a common fund case is inappropriate, a percentage-based method is still relevant)*; see also

19   Coffin*, 2020 WL 773255, at *6 (applying a 25% benchmark fee in following other district

20   courts); *Proctor*, 2019 WL 1923091 at *3 n.2; *Hernandez*, 2019 WL 1324743, at *3.

21       Here, the Court finds that the "benchmark" fee recovery is the appropriate estimate

22   in this case and applies it to each of Plaintiff's claims. *See Sloan*, 2019 WL 1111191, at *3

23   (*citing Patel*, 58 F. Supp. 3d at 1049) (only the portion of attorney's fees attributable to the

24   plaintiff's claims count towards the amount in controversy). As such, in adding together

25   the amount in controversy calculated above ($15,812.50), and the benchmark attorneys'

26   fees of 25% ($3,953.13), the total amount in controversy is $19,765.63. This falls far below

27   the diversity jurisdiction threshold. Defendants have not shown by the preponderance of

28

the evidence that the amount in controversy exceeds $75,000, and therefore, this Court lacks diversity jurisdiction.

### 3.  Application of Subsequent Violation Penalties

Next, Plaintiff takes issue with Defendants' use of the higher, "subsequent" violation penalties in calculating the PAGA penalties. Motion at 6. Defendants calculate these penalties with the initial violation assessed at $100.00 and all subsequent violations assessed at $200.00 under Labor Code § 2699(f), the initial violation assessed at $50.00 and all subsequent violations assessed at $100.00 under Labor Code § 558(a), and the initial violation assessed at $100.00 and all subsequent violations assessed at $250.00 under Labor Code § 1197.1. NOR ¶ 29; Oppo. at 19, 23. Defendants' calculations apply subsequent pay period penalties to thirteen pay periods. *See* NOR ¶ 29. Plaintiff argues the subsequent penalties, however, would only apply to the pay periods after the employer has been notified that it was violating a Labor Code provision. Motion at 7. Plaintiff states because there were only two pay periods preceding the LWDA notice, the subsequent pay period penalties would only be applied to two pay periods. *See* Motion at 7.

California law is clear that an employer is subject to "subsequent violation" level penalties only after the employer is notified that its conduct is in violation of the Labor Code. *See Steelhuyse v. UBS Financial Services, Inc.*, 317 F. Supp. 3d 1062, 1068 (N.D. Cal. 2018) (*citing Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008)); *see also Chen v. Morgan Stanley Smith Barney, LLC*, 2014 WL 4961182, at *2 (C.D. Cal., October 2, 2014) ("Under the Labor Code, if an employer does not have notice that they are committing a violation, they are not subject to the heightened penalties.").

Defendants contend that *Amaral* only addressed penalties as they applied to Labor Code §§ 210 and 225.5, and "the statutory language in Lab. Code § 2699(f)(2) is markedly different from the language used in Lab. Code §§ 210 and 225.2." Oppo. at 20 (emphasis omitted). Further, Defendants argue that the specific statutes at issue in *Amaral* apply an initial violation for "each failure to pay each employee," whereas the statutory language of Labor Code § 2699(f)(2) frame the initial violation as "the single initial violation." *Id.* at

20–21. The courts, however, have applied *Amaral*'s holding to interpret various Labor Code sections, including Labor Code § 2699(f)(2). *See Bernstein v. Virgin America, Inc.*, 3 F.4th 1127, 1144 (9th Cir. 2021) (applying *Amaral* to calculate penalties as to Labor Code § 2699(f)(2) where the defendant was not subject to heighted subsequent penalties that occurred before the defendant received notice it was violating the Labor Code); *Steenhuyse*, 317 F. Supp. 3d at 1068 (applying *Amaral* to Labor Code §§ 2699(f)(2) and 558(a)); *Vieyara-Flores v. Sika Corp.*, 2019 WL 2436998, at *5 (C.D. Cal. June 10, 2019) (applying *Amaral* to Labor Code § 2699(f)(2)).

The Court therefore agrees with Plaintiff on this issue. Defendants were not subject to heightened penalties that occurred before they received notice that they were violating the Labor Code. As such, only two pay periods would be subject to higher subsequent penalties, and the other ten pay periods would be penalized at the lower initial violation level. The following chart reviews and totals the calculations the Court adopts for each of Plaintiff's claims after applying *Amaral* to interpret the various Labor code sections:

| Labor Code § 2699(f) Penalties |
|---|
| Initial Pay Period Penalties: $100.00 x 11 pay periods = $1,100.00<br>Subsequent Pay Period Penalties: $200.00 x 2 pay periods = $400.00<br><div align="right">**Subtotal: $1,500.00**</div> |
| **Labor Code § 558(a) Penalties** |
| Initial Pay Period Penalties: $50.00 x 11 pay periods = $550.00<br>Subsequent Pay Period Penalties: $100.00 x 2 pay periods = $200.00<br><div align="right">**Subtotal: $750.00**</div> |
| **Labor Code § 1197.1 Penalties** |
| Initial Pay Period Penalties: $100.00 x 11 pay periods = $1,100.00<br>Subsequent Pay Period Penalties: $250.00 x 2 pay periods = $500.00<br><div align="right">**Subtotal: $1,600.00**</div> |
| <div align="right">**TOTAL: $3,850.00**</div> |

As illustrated, the total amount in controversy before any calculation of attorneys' fees is $3,850.00, and Defendants do not meet the threshold amount in controversy.

Further, as detailed above, even if the higher "subsequent" violation penalties were used for the claims, Defendants cannot reach the threshold for the amount in controversy under traditional diversity jurisdiction, and therefore, this Court does not have subject matter jurisdiction over the case.

### B.    CAFA Jurisdiction

As an additional matter, Defendants argue that this case is also removable under CAFA because "this action cannot be separately maintained given that it is subsumed in an already pending class action brought by Plaintiff against Defendants that has been properly removed to this court under CAFA and traditional diversity jurisdiction." NOR ¶ 89. Defendants state that Plaintiff impermissibly "split" his single cause of action into two suits by filing this lawsuit while the same cause of action was pending in *Evers I*. *Id.* ¶¶ 89, 95; *see Crowley v. Katleman*, 8 Cal. 4th 666, 681 (1994) ("A pleading that states the violation of one primary right in two causes of action contravenes the rule against 'splitting' a cause of action.").

First, this current action is not removable under CAFA on the same grounds as *Evers I* because *Evers I* was not properly removed to this Court. *See Evers I*, ECF No. 20 (order granting plaintiff's motion to remand). In *Evers I*, this Court found Defendants had not shown by the preponderance of the evidence that the threshold amount in controversy was met under traditional diversity or CAFA jurisdiction. *Evers I,* ECF No. 20 at 22, 25.

Second, even assuming that *Evers I* had not been remanded, PAGA actions are not sufficiently similar to Rule 23 class actions "to establish the original jurisdiction of a federal court under CAFA." *See Baumann v. Chase Inv. Services Corp.*, 747 F.3d 1117, 1122, 1124 (9th Cir. 2014). The finality of PAGA judgments differs from that of CAFA judgments. *Id.* at 1123. Accordingly, this current PAGA action is not removable under CAFA merely because there was a previous action brought under CAFA.

Defendants contend that *Baumann* is not directly applicable here, where Plaintiff's "PAGA claim improperly split-off from the first-filed *Evers I* class action," as to violate the doctrine of claim splitting. Oppo. at 24 (emphasis omitted); *see also* NOR ¶¶ 89, 90. In

*Baumann*, the Ninth Circuit held that the district court could not exercise original jurisdiction over a removed PAGA action under CAFA. *Baumann*, 747 F.3d at 1124. While *Baumann* is distinguishable, Plaintiff relies on *Baumann* to differentiate between a CAFA and PAGA action, and not as to whether CAFA jurisdiction was established when a PAGA action was filed after an already pending class action. Motion at 9; Reply at 9.

Defendants also rely on *Mendoza v. Amalgamated Transit Union* to argue that Plaintiff improperly split-off claims from *Evers I*. NOR ¶ 90 (citing *Mendoza v. Amalgamated Transit Union International*, 30 F.4th 879 (9th Cir. 2022)); Oppo. at 17. In *Mendoza*, the Ninth Circuit states "[t]o determine when such improper claim-splitting is present, we borrow from the test for claim preclusion. Under the federal claim-preclusion principles that apply in these federal-question-based suits, the bar of claim-splitting is applicable if the second suit involves (1) the same causes of action as the first; and (2) the same parties or their privies." *Mendoza*, 30 F.4th at 886 (citations and quotation marks omitted). Under this claim-splitting test, Defendants argue this current action was founded on the same causes of action and the same transactional nucleus of facts that gave rise to *Evers I*. *See* Oppo. at 27. *Mendoza*, however, presents the doctrine of claim-splitting and applies it to the "unique facts of [the] case," where the claims and injuries had the same fundamental identity and the same right. *Mendoza*, 30 F.4th at 887–88 (causes of action arose from a trusteeship). *Mendoza* is further distinguishable from the facts here because the fundamental identity of PAGA actions is different from the one of CAFA actions, and a PAGA claim has no effect on a CAFA action such that continued litigation of a second suit could impair any rights or interests that might be established in a judgment in the first. *See Yocupicio v. PAE Grp., LLC*, 795 F.3d 1057, 1059–62 (9th Cir. 2015); *see also Baumann*, 747 F.3d at 1124 ("In the end, Rule 23 and PAGA are more dissimilar than alike. A PAGA action is at heart a civil enforcement action filed on behalf of and for the benefit of the state, not a claim for class relief."). Although similarities exist between the claims in *Evers I* and *Evers II*, *Evers I* and *Evers II* were two separate actions with two different causes of action involving infringements of different rights.

Another factor considered in claim-splitting is whether the two cases involve the same parties. *Mendoza*, 30 F.4th at 887. Plaintiff's basis for filing two separate complaints rather than adding his PAGA claim to his first complaint was because this case was not a class action, and the State of California is a real party in interest in this PAGA action but not in *Evers I*. Reply at 10; *Baumann*, 747 F.3d at 1123 ("PAGA plaintiffs are private attorneys general who, stepping into the shoes of the LWDA, bring claims on behalf of the state agency.").

Lastly, while Defendants argue that Plaintiff has engaged in improper claim-splitting, they do not convincingly argue that Plaintiff did so to avoid CAFA's amount in controversy requirement and avoid federal court. The amount sought in a PAGA claim cannot be aggregated to satisfy the CAFA jurisdictional amount, and CAFA's diversity provisions cannot be invoked to give a federal court jurisdiction over PAGA claims. *See Yocupicio*, 795 F.3d at 1059–62 (a representative PAGA claim is not a "class" claim which applies to CAFA jurisdiction.); *Guzman v. Peri & Sons Farms of California, LLC*, 2021 WL 3286063, at *4 (Aug. 2, 2021) (amount sought in PAGA claim cannot be aggregated with amounts sought in CAFA claims). Ultimately, this is not a case in which the plaintiff has divided his claims to expand recovery or avoid the federal court, and the amounts in controversy in both *Evers I* and *Evers II* fail to meet the required jurisdictional threshold. Thus, there is no basis for the Court's jurisdiction over the PAGA action, and Defendants' removal of this action was substantively improper.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand is **GRANTED**, and the case is therefore **REMANDED** back to San Diego County Superior Court.

**IT IS SO ORDERED.**

Dated:  September 22, 2022

Honorable Linda Lopez
United States District Judge

22cv578-LL-BLM